CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SARAH E. GRISWOLD (CABN 240326)
Assistant United States Attorney

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5061
FAX: (408) 535-5081
sarah.griswold@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:24-cr-436 HSG |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Hearing Date:  May 27, 2026 |
| MIGUEL GERONIMO, | Hearing Time: 2:00 p.m. |
| Defendant. | Courtroom:     2, 4th Floor |
| | Hon. Haywood S. Gilliam, Jr. |

I.    INTRODUCTION

On August 1, 2024, Miguel Geronimo was charged by Indictment in the Northern District of California with Possession with Intent to Distribute Fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ]) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Doc. No. 12.  On December 16, 2024, the defendant pled guilty without a plea agreement.  Doc. No. 20.  Sentencing is set for May 27, 2026, at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr., United States District Judge.  Doc. No. 32.

II.    NATURE AND CIRCUMSTANCES OF THE OFFENSE CHARGED

On May 2, 2024, in Santa Cruz, the defendant sold fentanyl outside of a homeless shelter to unhoused addicts.  Santa Cruz County Sheriff's Office detectives saw a van parked near a homeless

shelter.  (Presentence Investigation Report ("PSR") ¶ 8.)  They saw multiple unhoused people enter and exit the van, each spending only a few minutes inside.  (*Id.*)  After a drug canine altered to the rear passenger door of the van, detectives had the defendant get out from the back-passenger section of the van.  (*Id.* at ¶¶ 9-11.)

In the back passenger area of the van, detectives found approximately 86.6 grams of fentanyl in two small clear baggies, a functional digital scale with a powdered residue on top, two mobile phones, and $3,389 in U.S. currency.  Detectives also found 21 unused plastic baggies in a case inside of a backpack between the front seats.  (*Id.* at ¶ 12.)  The fentanyl seized from the defendant was submitted to the DEA Western Regional Laboratory and tested positive for fentanyl with a net weight of approximately $86.6 \pm 0.2$ grams. (*Id.* at ¶ 14.)

After being Mirandized, Geronimo agreed to talk with detectives.  He said that the van was his father's, he was unemployed, and the fentanyl was for his own personal use.  (*Id.* at ¶ 13.)  At his change of plea hearing, the defendant agreed with his attorney that the facts the government set forth to prove that he possessed fentanyl with the intent to distribute it were true, except that they reserved the issue of how much fentanyl he possessed for distribution.  (Doc. 34 at 17:6-11.)  The defendant did not make any substantive statement regarding his culpability at his change of plea hearing or to the Probation Officer during the presentence investigation interview.  (Doc. No. 34, PSR at ¶ 17.)

III.    CRIMINAL HISTORY

Miguel Geronimo is a 32-year-old man with three burglary convictions, along with a false identification conviction and a felon in possession of a stun gun conviction.  (PSR at ¶¶ 33-37.)  He falls into Criminal History Category IV with seven criminal history points.  (PSR ¶¶ 38-39.)

IV.    TOTAL OFFENSE LEVEL

The United States agrees with Probation that Geronimo's Sentencing Guidelines are as follows:

|  | U.S.S.G. Section | Level/Points |
| --- | --- | --- |
| Base offense level: 40-160 grams fentanyl | § 2D1.1(a)(5), (c)(8) | 24 |
| Acceptance of responsibility | § 3E1.1(a), (b) | -3 |
| Total offense level |  | 21 |

(*See* PSR ¶¶ 19-28.)  With a Total Offense Level of 21, and a Criminal History Category of IV, Geronimo's advisory guideline range is 57 to 71 months.

## V.     SENTENCING FACTORS FOR CONSIDERATION

Factors appropriate for consideration pursuant to 18 U.S.C. § 3553(a) include not only the nature and circumstances of the offense, but the history and characteristics of Geronimo.  Additionally, the Court must consider whether the sentence reflects the seriousness of the offense; whether the punishment affords adequate deterrence to criminal conduct; whether the sentence protects the public from future crimes of the defendant; and whether the sentence provides Geronimo with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The seriousness of Geronimo's crime, along with his criminal history, is properly recognized in the USSG Guidelines range of 57 to 71 months.  Although the crime is serious, Geronimo engaged in rehabilitation efforts that should be considered by this Court in imposing an appropriate sentence. Geronimo commenced the Conviction Alternatives Program (CAP) on May 19, 2025, and, despite an early diluted sample, is expected to complete the program on May 21, 2026.  (PSR ¶ 6.)  The question is what variance is warranted for the rehabilitation efforts he made.

## VI.    SENTENCING RECOMMENDATION

Probation recommends a variance from the Guidelines for a sentence of time served, a three-year term of probation, no fine, and a $100 mandatory special assessment.  The United States does not make a sentencing recommendation in this case, but urges the Court to impose a sentence that protects the community while recognizing Geronimo's efforts at rehabilitation during pretrial release.

DATED: May 19, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


  */s/ Sarah E. Griswold*
SARAH E. GRISWOLD
Assistant United States Attorney